UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY CHARLES FORSBERG,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>　　　　　Defendant. | No. EDCV 12-2247-AGR<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

　　　Plaintiff Timothy Charles Forsberg ("Forsberg") filed this action on January 3, 2013. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos 10, 11.) On July 22, 2013, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument. The decision of the Commissioner is affirmed.

# I.

## PROCEDURAL BACKGROUND

On September 16, 2008, Forsberg filed applications for disability insurance benefits and supplemental security income benefits, alleging an onset date of April 3, 2007. Administrative Record ("AR") 176-86. The applications were denied initially and on reconsideration. AR 103-07, 112-18. Forsberg requested a hearing before an Administrative Law Judge ("ALJ") . AR 119. On June 21, 2010, the ALJ conducted a hearing at which Forsberg, a medical expert ("ME") and a vocational expert ("VE") testified. AR 70-89. On August 20, 2010, the ALJ issued a decision denying benefits. AR 8-19. On July 16, 2011, the Appeals Council denied the request for review. AR 1-4.

On September 14, 2011, Forsberg filed a complaint in this court. AR 598-600. On January 3, 2012, this Court entered judgment remanding the case for further proceedings based upon the parties' Stipulation to Voluntary Remand Pursuant to Sentence Four of 42 U.S.C. § 405(g). AR 603-06. The Appeals Council in turn remanded the case for a *de novo* hearing. AR 616. On August 2, 2012, a different ALJ conducted a hearing at which Forsberg and a VE testified. AR 26-69. On September 14, 2012, the ALJ issued a decision denying benefits. AR 548-68. This action followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether

substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

## III.
## DISCUSSION

### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation omitted).

### B. The ALJ's Findings

The ALJ found that Forsberg met the insured status requirements through December 31, 2012. AR 553. Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Forsberg had not engaged in substantial gainful activity since April 3, 2007, the alleged onset date. Forsberg had the following severe impairments: "seizure disorder; history of coronary artery disease, status post myocardial infarctions; inguinal hernia; degenerative disc disease; pain in the cervical spine; chronic bronchitis; supra[s]pinatus tendinopathy of the left shoulder; and depressive disorder." *Id.* He did not meet or equal a listed impairment. AR 554.

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

The ALJ found that Forsberg had the residual functional capacity ("RFC") to perform a range of light work. AR 555. He could lift/carry twenty pounds occasionally and ten pounds frequently; stand/walk/sit for six hours in an eight-hour workday with customary breaks; frequently kneel, stoop, crawl, and crouch; frequently climb ramps and stairs; never climb ladders, ropes or scaffolds; use the right dominant upper extremity with no restriction; occasionally reach in all directions with the left non-dominant upper extremity; sustain concentration, attention, persistence and pace in at least two-hour blocks of time; interact and respond appropriately to co-workers, supervisors and general public; and perform both complex and detailed tasks. AR 555-56. Forsberg should avoid exposure to unprotected height, dangerous moving machinery, pools of water, and sharp power tools due to seizure activity. *Id.*

Although Forsberg was unable to perform his past relevant work as a heavy equipment operator, the ALJ found there were jobs that existed in significant numbers in the national economy that Forsberg could perform, such as information clerk, parking lot signaler, and sales representative, door to door. AR 566-68.

### C. Credibility

Forsberg contends the ALJ improperly discounted his credibility.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ found that Forsberg's medically determinable impairments could reasonably be expected to produce the alleged symptoms. AR 558.

"Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of h[is] symptoms only by offering specific, clear and convincing reasons for doing so."

4

*Lingenfelter*, 504 F.3d at 1036 (citation and quotation marks omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints[.]'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).

In weighing credibility, the ALJ may consider factors including: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (*e.g.*, movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing SSR 88-13)[2] (quotation marks omitted). The ALJ may consider (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas*, 278 F.3d at 958-59.

The ALJ found that Forsberg's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent inconsistent with his RFC. AR 558. The ALJ relied primarily on five reasons: (1) inconsistencies in Forsberg's statements; (2) failure to follow treatment; (3) activities of daily living; (4) medication seeking-behavior; and (5) inconsistency with objective medical evidence.[3] AR 557-58. The ALJ's reasons were legally sufficient and supported by substantial evidence in the record.

---

[2] Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

[3] The ALJ also noted that Forsberg stopped working because he was laid off on February 28, 2007. AR 557. The Commissioner concedes that this is not a valid reason to discount credibility because Forsberg alleges a subsequent onset date of April 3, 2007. (Answer at 15 n.1.) This error does not warrant remand for the reasons discussed below.

### 1. Inconsistent Statements

The ALJ noted that Forsberg's alleged severity of his depression was inconsistent with his testimony that he was not taking any medication. AR 557.

Forsberg testified he was not taking medication for his depression because it was "messing me up." AR 41. By contrast, the record indicates that Forsberg reported that his anti-depressant medication from his primary treating physician was "helping him." AR 443. Thus, an ALJ may consider inconsistencies in a claimant's statements when weighing a claimant's credibility.[4] *Thomas*, 278 F.3d at 958–59.

### 2. Failure to Pursue Treatment

Failure to seek treatment or failure to follow prescribed treatment may be considered in assessing credibility. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (claimant's statements may be less credible if level or frequency or treatment is inconsistent with degree of complaints); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (lack of consistent treatment may be considered); *Bunnell*, 947 F.2d at 346 (noncompliance with prescribed course of treatment is relevant factor).

The ALJ cited an April 2007 treatment note indicating that, despite a history of seizures, Forsberg had been off his medication for four or five years. AR 557; *see also* AR 234-35, 309, 311. As noted by the ALJ, a June 2007 treatment note reflected that "despite a referral [in April 2007] to a neurologist, [Forsberg] did not go see a neurologist or get his lab done." AR 309, 557. Forsberg missed a neurology appointment in August 2007. AR 349. The ALJ observed that in August 2011, Forsberg "left the hospital against medical advice despite acute respiratory failure and

---

[4] Forsberg testified that he did not undergo counseling or therapy for his depression because the health clinic he went to did not "cover [him] going to get that kind of help." AR 41. Failure to seek medical treatment cannot support an adverse credibility finding when it is due to lack of funds or medical coverage. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).

seizure activity." AR 557, 774 (noting pneumonia and sepsis).[5] The ALJ noted that, in March 2011, Forsberg admitted he did not take his hypertension medication. AR 557, 798. Despite being strongly advised to stop smoking cigarettes, Forsberg continued to do so. AR 557; *see also* AR 482, 531, 536, 801, 845, 851, 853. A December 2011 progress note indicated that Forsberg was uncooperative with his physical examination. AR 823. The ALJ could reasonably rely on Forsberg's failure to follow prescribed treatment and uncooperative behavior to discount his credibility.

### 3. Daily Activities

An ALJ may consider a claimant's daily activities when weighing credibility. *Bunnell*, 947 F.2d at 346. As noted by the ALJ, in October 2008, Forsberg indicated that his daily activities included "reading, playing with and taking care of his dog, watching television and movies, preparing his own meals, washing dishes, making the bed, going out a few times a day, shopping, spending time with others, visiting with family and friends, and going to the church." AR 237-42, 557. His treating records indicate similar activities in March 2011. AR 798. Forsberg reported no problems with personal care. AR 240-41, 557. *See Molina*, 674 F.3d at 1113 ("Even where [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."). Moreover, when evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

### 4. Medication-Seeking Behavior

In March 2012, Forsberg was denied narcotics due to his "suspicious" and "prev[ious] aberrant behavior."[6] AR 862. The ALJ properly considered evidence of

---

[5] Forsberg later returned to the hospital and stated he could not function. AR 777. However, he left again before reevaluation. AR 778-79.

[6] Forsberg had been previously counseled against chronic use of narcotic medication. AR 841, 843.

drug-seeking behavior in discounting credibility. *See Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001).

### 5. Objective Medical Evidence

Forsberg does not dispute the ALJ's finding that the degree of Forsberg's subjective complaints is not supported by objective medical evidence. The ALJ's finding is supported by substantial evidence.

### 5. Lay Witness Statements

Forsberg contends the ALJ improperly discounted a third party function report by his friend Lori Hancock ("Hancock").

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). "When an ALJ discounts the testimony of lay witnesses, 'he [or she] must give reasons that are germane each witness.'" *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (citation omitted).

The ALJ found Hancock's statements credible only to the extent they were consistent with Forsberg's RFC. AR 558. The ALJ rejected her statements on the following grounds: (1) Hancock's statements parroted Forsberg's subjective complaints; (2) Hancock is a biased party; and (3) Hancock's statements were not supported by the medical evidence. *Id.*

An ALJ may discount lay witness testimony that is similar to the claimant's subjective complaints when the ALJ has provided clear and convincing reasons for rejecting those subjective complaints. *Valentine*, 574 F.3d at 694. The ALJ's finding that Hancock's statements were substantially similar to Forsberg's subjective complaints is supported by substantial evidence. Compare AR 237-44, *with* AR 246-53. As discussed above, the ALJ properly discounted Forsberg's credibility. Therefore, the ALJ may discount the lay witness statements for the same reasons. *See Valentine*, 574

F.3d at 694 (wife's testimony properly rejected where ALJ found husband's similar testimony not credible for clear and convincing reasons).

The ALJ considered that Hancock's opinion was "not an unbiased one because she has a friendship motivation to support [Forsberg]." AR 558. "[R]egardless of whether they are interested parties, 'friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [his or] her condition.'" *Valentine*, 574 F.3d at 694 (citation omitted). On the other hand, evidence that a lay witness "exaggerated a claimant's symptoms *in order* to get access to his disability benefits, as opposed to being an 'interested party' in the abstract, might suffice to reject that spouse's testimony." *Valentine*, 574 F.3d at 694 (emphasis in original). The ALJ made no such finding and this reason is not valid.

On the other hand, inconsistency with medical evidence is a germane reason to discount lay witness statements. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *Lewis*, 236 F.3d at 511 ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.").

### 6. Conclusion

The ALJ's credibility finding is supported by substantial evidence. Accordingly, this court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).

Although the ALJ could not rely on the fact that Forsberg stopped working prior to the alleged onset date and failed to get therapy for depression that he could not afford, remand is not warranted. In *Carmickle v. Comm'r*, 533 F.3d 1155 (9th Cir. 2007), the Ninth Circuit concluded that two of the ALJ's reasons for making an adverse credibility finding were invalid. When an ALJ provides specific reasons for discounting the claimant's credibility, the question is whether the ALJ's decision remains legally valid, despite such error, based on the ALJ's "remaining reasoning *and ultimate credibility determination.*" *Id.* at 1162 (italics in original). In light of the ALJ's valid reasons for

9

discounting Forsberg's credibility, substantial evidence supported the ALJ's credibility finding. *See Bray v. Comm'r. of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (error in one of four reasons for discounting credibility was harmless).

### D.    **Step Five of the Sequential Analysis**

Forsberg challenges the ALJ's step five determination that he can perform the jobs of information clerk, parking lot signaler and sales representative, door to door. The Commissioner concedes that the ALJ's finding concerning the job of parking lot signaler is not supported by substantial evidence. (JS at 30.) Any error is harmless because the ALJ properly determined that Forsberg could perform two other jobs.

At step five of the sequential analysis, the Commissioner bears the burden of demonstrating there is other work in significant numbers in the national economy the claimant can do. *Lounsburry*, 468 F.3d at 1114. If the Commissioner satisfies this burden, the claimant is not disabled and not entitled to disability benefits. If the Commissioner cannot meet this burden, the claimant is disabled and entitled to disability benefits. *Id.*

"There are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Id*

Forsberg argues that the jobs of information clerk and sales representative, door to door, are inconsistent with his 11th grade education and skills. His argument is unsupported. The regulations note that:

> Education is primarily used to mean formal schooling or other training which contributes to your ability to meet vocational requirements, for example, reasoning ability, communication skills, and arithmetical ability. However, if you do not have formal schooling, this does not necessarily mean that you are uneducated or lack these abilities. Past work experience and the kinds of responsibilities you had when you were working may show that you have

intellectual abilities, although you may have little formal education. Your daily activities, hobbies, or the results of testing may also show that you have significant intellectual ability that can be used to work.

20 C.F.R. §§ 404.1564(a), 416.964(a).

Forsberg's eleventh grade level means that he has "limited education" as defined by the regulations. *Id.* at §§ 404.1564(b)(3), 416.964(b)(3).[7] A claimant who is determined to have a "limited education" has "ability in reasoning, arithmetic, and language skills, but not enough to . . . do most of the more complex job duties needed in semi-skilled or skilled jobs." *Id.* at §§ 404.1564(b)(3), 416.964(a)(3). The jobs of information clerk[8] and sales representative are unskilled with a specific vocation

---

[7] In evaluating educational level, the regulations note the following categories:
  (1) Illiteracy. Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.
  (2) Marginal education. Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education.
  (3) Limited education. Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.
  (4) High school education and above. High school education and above means abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above. We generally consider that someone with these educational abilities can do semi-skilled through skilled work.

20 C.F.R. §§ 404.1564(b), 416.964(b).

[8] The DOT states that the job of information clerk may also be known as travel clerk and describes the travel clerk position as follows: "Provides travel information for bus or train patrons. Answers inquiries regarding departures, arrivals, stops, and destinations of scheduled buses or trains. Describes routes, services, and accommodations available. Furnishes patrons with timetables and travel literature. Computes and quotes rates for interline trips, group tours, and special discounts for children and

11

preparation ("SVP") level 2, and are not inconsistent with the abilities of a person having "limited education." AR 568. Forsberg previously worked as a "heavy equipment operator," a *skilled* position with an SVP level of 6. AR 52, 679 (emphasis added). Forsberg does not dispute the accuracy of the hypothetical question the ALJ posed to the VE which included Forsberg's ability to perform both complex and detailed tasks. AR 556. The ALJ's findings are supported by substantial evidence.

Forsberg contends that the VE provided inaccurate figures for the number of sales representative, door to door jobs. At the administrative hearing, the VE testified that after applying a 50 percent erosion factor, there were 3,000 sales representative, door to door jobs in the regional economy and 78,000 in the national economy. AR 56. Forsberg cites the May 2011 census by the Department of Labor, which Forsberg contends reflects 590 sales representative, door to door jobs in the regional economy and 6,910 in the national economy.

The ALJ is entitled to rely on the VE's "testimony regarding the number of relevant jobs in the national economy." *Bayliss*, 427 F.3d at 1218. "A VE's recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required." *Id.* Forsberg's counsel did not object to the VE's qualifications at the administrative hearing or question the VE about job numbers. Nor is there any testimony in the record explaining the OES numbers on which Forsberg now relies. *Solorzano v. Astrue*, 2012 WL 84527, *6 (C.D. Cal. 2012) ("Counsel are not supposed to be potted plants at administrative hearings. They have an obligation to take an active role and to raise issues that may impact the ALJ's decision while the hearing is proceeding so that they can be addressed."). Forsberg has not shown error.

---

military personnel, using rate tables." (Exh. A to JS.)

## IV.

## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: January 14, 2014

*/s/ Alicia G. Rosenberg*
ALICIA G. ROSENBERG
United States Magistrate Judge